UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CLAUDETTE GRIFFITH,

Plaintiff,

-against-

METROPOLITAN TRANSIT AUTHORITY-
NEW YORK CITY TRANSIT, and JESSE
WRIGHT SEDER, individually,

Defendants.

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:   3/22/2022
```

19 Civ. 6234 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Plaintiff, Claudette Griffith, brings this action against Defendants the New York City

Transit Authority ("NYCTA")[1] and Jesse Wright Seder, alleging discrimination on the basis of

race, sex, and age in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et*

*seq.* ("Title VII"); 21 U.S.C. § 1981; the Age Discrimination and Employment Act, 29 U.S.C.

§ 621 *et seq.* (the "ADEA"); the New York State Human Rights Law, N.Y. Exec. Law § 290 *et*

*seq.* (the "NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-

101 *et seq.* (the "NYCHRL"). *See* Amend. Compl. ¶ 1, ECF No. 15. Defendants move for

summary judgment. Defs. Mot., ECF No. 73. For the reasons stated below, Defendants' motion

is GRANTED in part and DENIED in part.

### BACKGROUND[2]

In October 2006, Plaintiff, a 63-year-old Black woman, began working for NYCTA as a

Senior Administrative Assistant in the administrative division of the Central Maintenance

---

[1] The caption incorrectly refers to Plaintiff's prior employer as the "Metropolitan Transit Authority-New York City Transit." *See* Amend. Compl., ECF No. 15. The correct name is the "New York City Transit Authority." *See* Defs. Mem. at 1 n.1, ECF No. 74.

[2] The Court considers admitted for purposes of the motion any paragraph that is not specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party. Local Civ. R. 56.1(c). Where there are no citations, or where the cited materials do not support the factual assertions in the statements, the Court is free to disregard the assertion. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001). Citations to a paragraph in the Rule 56.1 statement also include the other party's response.

Facility ("CMF").  Defs. 56.1 ¶¶ 3, 5, ECF No. 75.  CMF is comprised of multiple offices, including East New York in Brooklyn, Grand Avenue in Queens, and Ninth Avenue, Eastchester, and Zerega Avenue in the Bronx.  *Id*. ¶ 7.  "CMF employees may be asked or told to move between locations at any time."  *Id*. ¶ 8.  Although Plaintiff was originally hired to work in the East New York office, she was transferred to the Grand Avenue office the following year. *Id*. ¶ 9.

In 2011, Plaintiff applied for, and received, a promotion to Staff Analyst II.  *Id*. ¶¶ 11–12. In that role, Plaintiff reported to the Manager of Shop Administration ("Manager").  *Id*. ¶ 15. Between 2011 and 2015, the position of Manager was held by two Black women—Marissa Chambers, age 31, and Dalphyne Gibbs, age 40—and one Asian man, Patrick Tang, age 43.  *Id*. ¶ 16.  The parties dispute whether these Managers were assigned a designated staff analyst to assist them with their work.  *See* Pl. Dep. I at 132–33, ECF No. 81-1; Seder Dep. at 52–53, 83, ECF No. 81-4; Seder Decl. ¶¶ 28–29, ECF No. 78.

In April 2015, Jesse Seder, a 51-year-old white man, became the acting Assistant General Manager of Strategic Planning for CMF ("AGM").  Defs. 56.1 ¶¶ 3, 20.  In that same month, Tang, who was then Manager, left CMF, *id*. ¶ 38, and Seder appointed Plaintiff as the acting Manager, *id*. ¶ 40.  The parties dispute whether Seder supervised Tang during the time in April when Tang was Manager and Seder was AGM.  *See* Seder Decl. ¶ 27; Seder Dep. at 44, 52. Plaintiff then applied for the Manager position on a permanent basis.  Defs. 56.1. ¶ 41.  Seder served on the panel that interviewed Plaintiff and selected her as one of three eligible candidates. *Id*. ¶¶ 43, 45.  Seder, as hiring manager, chose Plaintiff and formally promoted her in June 2015. *Id*. ¶ 46–48.  As Manager, Plaintiff initially reported directly to Seder.  *Id*. ¶ 52.  In July 2015, Seder was promoted to AGM on a permanent basis.  *Id*. ¶¶ 21.

As Manager, Plaintiff initially supervised approximately four timekeepers and five or six staff analysts. *Id.* ¶ 55. One of those analysts was Peter Miller, a 44-year-old white man. *Id.* ¶¶ 3, 57. The staff analysts assisted Plaintiff with her work, but no one analyst was specifically assigned to her. *Id.* ¶¶ 72–74, 76; Pl. Dep. I at 214–16. The parties dispute whether Plaintiff required the assistance of a specifically assigned staff analyst. *See* Pl. Dep. I at 218–19, 222, 226–29, 230–33; Defs. 56.1 ¶¶ 72–81.

As Plaintiff's supervisor, Seder conducted annual reviews of Plaintiff's performance. Defs. 56.1 ¶ 83. Seder's 2016 and 2017 reviews indicated that Plaintiff spent too much time on timekeeping duties and too little time on the remainder of her responsibilities. *Id.* ¶¶ 85–86. Plaintiff dedicated "about 75 percent" of her time to timekeeping, Pl. Dep. I at 190–91, 202, 265–69, even though timekeeping represented about 20–30% of the total administrative work in CMF, *see* Seder Decl. ¶ 26; Seder Dep. at 228.

In 2017, Plaintiff asked Seder for a "promotion in place" ("PIP"), which is an advancement within a specific title that is accompanied by a salary increase. Defs. 56.1 ¶¶ 62–64. Because Plaintiff was not eligible for a PIP as Manager, Seder requested that Human Resources ("HR") conduct a vertical equity analysis ("VEA"), an assessment of a manager's salary that evaluates whether she is earning at least 10% more than the average individual who reports to her. *Id.* ¶¶ 65–66. Seder provided HR with a list of Plaintiff's direct reports and did not include one staff analyst who was making more money than Plaintiff. *See* Seder Dep. at 117–27. That staff analyst was not one of Plaintiff's direct reports. *Id.* at 121–23. Because Plaintiff's VEA demonstrated that she earned over 10% more than the identified individuals, HR determined that she was ineligible for a raise. Defs. 56.1 ¶ 67. In 2019, Seder requested that HR conduct a VEA for Miller, who then held the position of a general superintendent. *Id.* ¶ 70.

Seder provided HR with a list of Miller's direct reports.  *See* Miller VEA Email, ECF 78-4.

Miller was also determined to be ineligible for a raise.  Defs. 56.1 ¶ 71.

In September 2016, NYCTA issued a public job posting soliciting applicants for director-level General Superintendent Support Service ("GSSS") positions.  *Id*. ¶ 102.  The posting stated that GSSS positions would be available at "[v]arious" locations, but specifically discussed the GSSS working at a "depot."  GSSS Posting, ECF No. 80-2.  After candidates successfully interviewed, they were placed on a promotional list and could be selected to fill any open GSSS positions.  Defs. 56.1 ¶¶ 103–04.  Miller applied for the GSSS posting and was selected for inclusion on the promotional list.  *Id*. ¶¶ 108, 115.  Plaintiff did not apply.  *Id*. ¶ 111.  Seder was not on the interview panel that assessed Miller's candidacy for the GSSS promotion.  Seder Dep. at 135.

In early 2017, Seder sought approval to add a CMF GSSS position.  *See* Defs. 56.1 ¶¶ 93–95; Seder Decl. ¶¶ 40–41; GSSS Proposal, ECF No. 78-7.  Seder's proposal stated that another high-level employee was needed within CMF because the Manager, Plaintiff, spent "nearly all [of her] time tasked with timekeeping and payroll issues, which effectively narrow[ed] the scope of [her] responsibility to timekeeping/payroll only."  GSSS Proposal at 3.  The person selected for the GSSS position "would manage and oversee the entire administrative staff and the associated day-to-day tasks that are currently done by the AGM," *i.e.*, Seder.  *Id*. at 4.

On June 12, 2017, Miller was selected for a GSSS position outside of CMF.  Defs. 56.1 ¶ 118.  Seder and Frank Annicaro, CMF's chief officer, discussed "holding" Miller as a staff analyst at CMF until they could fill his position.  *See id*. ¶¶ 39, 121–22.  The next day, Annicaro offered Miller the GSSS position within CMF, *id*. ¶ 123, which Miller accepted, *id*. ¶ 125.  The

CMF GSSS position was never publicly posted nor specifically referenced on the public GSSS

posting.  *See* GSSS Posting.  Before Annicaro promoted Miller, CMF had never had a GSSS.

*See* Miller Dep. at 41, ECF No. 81-3.  Plaintiff claims that, if she had known that the GSSS

posting included a GSSS position within CMF, she would have applied for the GSSS

promotional list.  Pl. Decl. ¶¶ 8, 11, ECF No. 81-30.  Once Miller was promoted to GSSS, he

became Plaintiff's direct supervisor.  *See* Defs. 56.1. ¶¶ 127, 128; Miller Dep. at 21.  Miller also

became the direct supervisor for all of the staff analysts that had previously reported to Plaintiff.

Defs. 56.1 ¶ 134.  Plaintiff continued to supervise the timekeepers, *id*. ¶ 134, and she continued

to be at least partially supervised by Seder, *id*. ¶ 128, who was now Miller's direct supervisor, *id*.

¶ 127.

Plaintiff testified that, after Miller was promoted to GSSS, Seder became "very

disrespectful" and "pass[ed] her office" without "saying good morning or good afternoon."  *See*

Pl. Dep. I at 340.  Rather than speak to her, Seder would go "straight into Peter Miller's office"

where they would laugh and joke.  Pl. Dep. I at 340.  She also testified that, Seder "spen[t] more

time" with "young white men" than with "elderly black female[s]," *id*. at 328, 332, 341, 345–46,

348–54, and that he helped young white men get promotions, despite not providing this

assistance to older Black women, *id*. at 285, 329, 332–35; Pl. Dep. II at 400, 433–34, ECF No.

81-2.  On one occasion, Seder did not include Plaintiff on an e-mail discussing the timekeeping

department.  Pl. Dep. I at 301–03.  On another occasion, Seder sent Plaintiff an email criticizing

her for not sitting alongside him and Miller at a staff meeting.  Defs. 56.1 ¶ 200.  And, on a third

occasion, Seder rejected Plaintiff's proposed solution to a personnel issue involving another

Black female employee, and told her to work with Miller to resolve the problem.  Pl. Dep. I at

346–48, 359–66.  Plaintiff felt that Seder treated the other Black female employee unfairly.  *See*

*id.*; *see also* Pl. Decl. ¶ 4.  When criticizing the way Plaintiff handled the personnel issue, Seder

wrote that he "expect[ed] [her] to be a leader, and not sour about the situation."  Pl. Dep. I at

366.  Plaintiff never heard Seder make any form of discriminatory comments, slurs, or jokes.

Defs. 56.1 ¶ 177.

Seder determined that the Manager position should report to the Zerega Avenue office,

*id.* ¶ 144, and, in October 2018, Miller provided Plaintiff with a job description for a Manger role

based out of the Zerega location, *id.* ¶ 153.  At the Zerega office, Plaintiff would no longer be

responsible for supervising the timekeeping staff or handling timekeeping or payroll issues.  *Id.*

¶ 163.  Although Plaintiff would have been responsible for a variety of duties, *see id.* ¶ 161, the

parties dispute the extent to which these duties were managerial functions, *see* Pl. Dep. I at 316–

18; Miller Dep. at 108.  The job description provided to plaintiff indicated that the changes "will

be in effect as of Monday, December 3rd, 2018."  Zerega Transfer, ECF No. 81-22.  The parties

dispute whether Plaintiff was informed that she would not need to report to the Zerega office on

that date.  *See* Seder Dep. at 234–35; Pl. Dep. I at 307–08.

Plaintiff was displeased with the proposed Zerega transfer.  *See*, *e.g.*, Pl. Dep. I at 323,

329–30; Suppl. Pl. Decl. ¶¶ 4–6, ECF No. 86.  Her commute would be longer, Pl. Dep. I at 323,

329–30; Suppl. Pl. Decl. ¶¶ 4–6, and would require her to pay a toll, Suppl. Pl. Decl. ¶¶ 5–6.

Plaintiff also believed that the Zerega office was a "place where employees were on occasion

transferred as a disciplinary measure."  *Id.* ¶ 4.  The day after she received the Zerega job

description, Plaintiff spoke with Annicaro about the transfer.  Pl. Dep. II at 402–04.  Plaintiff

cannot remember the substance of that conversation.  *See id.* at 403–05.  On October 26, 2018,

Plaintiff sent an email to Seder informing him that she was "in the process of retiring by

[November 30, 2018]."  Pl. Retirement Email, ECF 81-23.  Seder congratulated her.  *Id.*

Plaintiff never told anyone at NYCTA that she was retiring because of discriminatory treatment. Pl. Dep. II at 443–44.

On July 3, 2019, Plaintiff filed her complaint, ECF No. 1, which she amended on August 29, 2021, Amend. Compl.  The amended complaint raises claims for discrimination on the basis of race, sex, and age, under Title VII, § 1981, the ADEA, the NYSHRL, and the NYCHRL.  *Id.* ¶ 1.  After the conclusion of discovery, Defendants moved for summary judgment on all of Plaintiff's claims.  *See* Defs. Mot.

## DISCUSSION

I.   <u>Legal Standard</u>

Summary judgment is appropriate when the record shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–26 (1986).  A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248. The moving party initially bears the burden of informing the court of the absence of a genuine dispute of material fact by citing particular evidence in the record.  Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 323–24; *Koch v. Town of Brattleboro*, 287 F.3d 162, 165 (2d Cir. 2002).  If the nonmoving party has the ultimate burden of proof on specific issues at trial, the movant may also satisfy its own summary judgment burden by demonstrating that the adverse party cannot produce admissible evidence to support an issue of fact.  *Celotex*, 477 U.S. at 322–23; *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).  If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine dispute of material fact.  *Beard v. Banks*, 548 U.S. 521, 529 (2006); *PepsiCo*, 315 F.3d at 105.  In doing so,

the non-moving party "may not rely on conclusory allegations or unsubstantiated speculation," *Scott v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (citation omitted), as "unsupported allegations do not create a material issue of fact," *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (citation omitted).  To defeat summary judgment, the opposing party must set forth "concrete evidence from which a reasonable juror could return a verdict in [her] favor." *Anderson*, 477 U.S. at 256.  In deciding the motion, the court views the record in the light most favorable to the nonmoving party.  *Koch*, 287 F.3d at 165.

Courts must be "cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question," and must "carefully scrutinize[]" the non-movant's affidavits and depositions for "circumstantial proof which, if believed, would show discrimination." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (quotation marks and citation omitted).  That said, summary judgment is warranted if the opposing party "relies on conclusory allegations of discrimination and the employer provides a legitimate rationale for its conduct." *Figueroa v. N.Y. Health and Hosps. Corp.*, 500 F. Supp. 2d 224, 228 (S.D.N.Y. 2007) (quotation marks and citation omitted).

II.   Title VII, § 1981, ADEA, NYSHRL

The Court shall analyze Plaintiff's claims under Title VII, § 1981, the ADEA, and the NYSHRL using the burden shifting framework for Title VII claims set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 (1973).  *See Choudhury v. Polytechnic Inst. of New York*, 735 F.2d 38, 44 (2d Cir. 1984) (applying the *McDonnell-Douglas* framework to § 1981 claims); *Olsson v. ABM Taxi Dispatch Laguardia Airport*, No. 18 Civ. 8815, 2020 WL 5038742, at *4 & n.3 (S.D.N.Y. Aug. 26, 2020) (applying the *McDonnell-Douglas* framework to NYSHRL claims for conduct occurring before August 2019); *Lively v. WAFRA Inv. Advisory*

*Grp., Inc.*, 6 F.4th 293, 303 n.3 (2d Cir. 2021) (applying the *McDonnell-Douglas* framework to ADEA claims).

Under the *McDonnel-Douglas* framework, a plaintiff must first establish a *prima facie* case of discrimination by showing: (1) she is a member of a protected class; (2) she is qualified for the positions she held; (3) she suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination. *Ruiz v. County of Rockland*, 609 F.3d 486, 491–92 (2d Cir. 2010). Although the plaintiff's burden at this stage is minimal, "it is not . . . nonexistent." *Wellington v. Spencer-Edwards*, No. 16 Civ. 6238, 2019 WL 2764078, at *3 (S.D.N.Y. July 1, 2019); *see also Garcia v. Henry St. Settlement*, 501 F. Supp. 2d 531, 540 (S.D.N.Y. 2007) (explaining how the Second Circuit "recognized that this burden has substance" (quotation marks omitted)). A plaintiff must point to specific facts that make out the elements of a *prima facie* case, as "[c]onclusory and speculative allegations will not suffice." *Nguyen v. Dep't of Corr. & Cmty. Servs.*, 169 F. Supp. 3d 375, 388 (S.D.N.Y. 2016).

If the plaintiff makes a *prima facie* case, the burden then shifts to the defendant to offer a legitimate nondiscriminatory reason for the adverse action. *Ruiz*, 609 F.3d at 491–92. If the defendant does so, the burden returns to the plaintiff to demonstrate that the real reason for the action was the plaintiff's protected characteristic. *Id.*

Here, Plaintiff alleges that Defendants discriminated against her by (1) denying her the appointment of a staff analyst specifically assigned to assist her in her duties as Manager, Pl. Mem. at 14–15, ECF No. 87; (2) failing to raise her salary as part of a VEA process, *id.* at 4–5; (3) promoting Miller instead of her to the CMF GSSS position, *id*. at 5–8; (4) demoting her after Miller's promotion, *id*. at 5–8; (5) transferring her to the Zerega office, *id*. at 22–24; and (6)

constructively discharging her by transferring her to a less desirable office location, assigning her

diminished work responsibilities, and subjecting her to "endless criticism" and other

discriminatory adverse acts, *id*. at 10–12, 24–28.

A.     Denial of a Supporting Staff Analyst

Defendants argue that Plaintiff's claims regarding her lack of a supporting staff analysist

fail because Plaintiff has not shown that she suffered an adverse employment action or that the

denial took place under circumstances giving rise to an inference of discrimination.  Defs. Mem.

at 21–22, ECF No. 74.

This Court has previously found that a "loss of support staff" can constitute a materially

adverse employment action if other employees are provided with more support.  *Branch v. State

Univ. of New York*, No. 18 Civ. 9516, 2020 WL 4057594, at *3 (S.D.N.Y. July 20, 2020).

Although Defendants claim that Plaintiff was adequately supported by the staff analysts who

reported to her and that she had a timekeeper who served as her "right hand person," Defs. Mem.

at 21, Plaintiff disputes this characterization, *see* Pl. Dep. I at 218–19, 222–23, 226–29, 230–33.

But, even if Plaintiff has raised a dispute of fact regarding whether the denial of a designated

staff analyst was an adverse action, the Court does not consider this dispute material because

Plaintiff has not shown that the denial took place under circumstances giving rise to an inference

of discrimination.

Plaintiff argues that the denial of a designated staff analyst was discriminatory because

"[a]ll of Plaintiff's predecessors had been assigned a Staff Analyst specifically to assist them in

their duties as Manager," and "Seder continually denied such support to Plaintiff, a Black

woman, while providing it to white managers such as Miller."  Pl. Mem. at 14.  Although

Plaintiff can raise an inference of discrimination by "demonstrating that similarly situated

employees [outside of her protected class] were treated more favorably," *Nguyen*, 169 F. Supp.

3d at 388, such a demonstration must include a showing that the comparator employees were

"similarly situated in all material respects," *McGuinness v. Lincoln Hall*, 263 F.3d 49, 53–54 (2d

Cir. 2001). Employees are considered to be "similarly situated in all material respects," when

they "have a situation sufficiently similar to [the] plaintiff's to support at least a minimal

inference that the difference of treatment may be attributable to discrimination." *Id*. at 54.

"Ordinarily, the question whether two employees are similarly situated is a question of fact for

the jury," but "a court can properly grant summary judgment where it is clear that no reasonable

jury could find the similarly situated prong met." *Doner-Hedrick v. New York Inst. of Tech.,* 874

F. Supp. 2d 227, 240 (S.D.N.Y. 2012) (footnotes omitted).

Here, the undisputed facts are such that no reasonable jury would conclude that Plaintiff's

comparator evidence raises an inference of discrimination. In her deposition, Plaintiff describes

three prior Managers who received dedicated support staff—Dalphyne Gibbs, Marissa

Chambers, and Patrick Tang. Pl. Dep. I at 89, 132–33. But, Gibbs and Chambers were never

supervised by Seder, *see* Seder Decl. ¶ 27, and Seder supervised Tang for, at most, a couple of

weeks in April as an acting AGM, *see id.*; Seder Dep. at 44, 52. Thus, no reasonable jury could

conclude that prior Managers and Plaintiff were similarly situated. Additionally, any arguments

Plaintiff may raise based on Miller being assigned a supporting staff analyst are unavailing

because Plaintiff, a Manager, and Miller, a GSSS, were not similarly situated.

Furthermore, after carefully scrutinizing the record for other proof of discrimination that

would support Plaintiff's *prima facie* case, the Court has found none. In addition to her

comparator evidence, Plaintiff argues that Seder showed his discriminatory intent by

communicating with older Black women more infrequently than he communicated with younger

white men, *see* Pl. Dep. I at 283–84, 332, 336–38, 340–43; Pl. Decl. ¶¶ 2–3, and by supporting

the career ambitions of older Black women to a lesser degree than he supported those of younger

white men, *see id*. at 332–33, 335.  Plaintiff's statements amount to conclusory allegations,

speculation, and expressions of her feelings of being discriminated against and her perceptions

that others were subjected to discrimination.  *See id*. at 283–84, 333–38, 340–43; Pl. Decl.

¶¶ 2–3.  These statements are not evidence of discrimination.  *See Bickerstaff v. Vassar Coll.*,

196 F.3d 435, 456 (2d Cir. 1999), *as amended on denial of reh'g* (Dec. 22, 1999) ("feelings and

perceptions of being discriminated against are not evidence of discrimination" (quotation marks

and alterations omitted)); *Williams v. All. Nat'l Inc.,* No. 98 Civ. 7984, 2001 WL 274107, at *5

(S.D.N.Y. Mar. 19, 2001), *aff'd sub nom.*, 24 F. App'x 50 (2d Cir. 2001).

Additionally, it is undisputed that Seder "never made any discriminatory comments,

slurs, or jokes directed to Plaintiff."  *See* Defs. 56.1 ¶ 177.  Indeed, Plaintiff presented evidence

of only one statement Seder made that could potentially support an inference of discriminatory

animus—Seder's 2016 statement expressing to Michelle Evans, another CMF employee, that her

"age should disqualify [her] from promotions because [she] should have prioritized promotions

earlier in [her] career."  Evans Decl. ¶ 9, ECF No. 81-28.  But, the connection between this

isolated statement and Seder's denial of a supporting staff analyst to Plaintiff is far too attenuated

to allow a reasonable jury to infer that this denial was influenced by Seder's alleged

discriminatory animus towards older workers.  *See Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134,

149–50 (2d Cir. 2010); *Naumovski v. Norris*, 934 F.3d 200, 216 (2d Cir. 2019).

Accordingly, Defendants' motion for summary judgment on Plaintiff's claims under Title

VII, § 1981, the ADEA, and the NYSHRL based on Defendants' failure to provide her with a

supporting staff analyst is GRANTED.

B.  Failure to Provide a Raise

Next, Defendants argue that Plaintiff's claims of discrimination cannot be based on their refusal to provide Plaintiff a raise following a VEA because Plaintiff has not provided evidence of discriminatory intent nor presented facts showing that Defendants' stated reasons for denying Plaintiff a raise are pretextual.  Defs. Mem. at 20–21.  The Court agrees.

In support of her claims, Plaintiff argues that Seder omitted a higher-earning staff analyst from Plaintiff's VEA, but that he did not omit any higher-earning reports from Miller's VEA. Pl. Mem. at 4–5.  In response, Defendants argue that the higher-earning staff analyst was not one of Plaintiff's direct reports, and, therefore, that it would have been improper for Seder to include that staff analyst in Plaintiff's VEA.  *See* Defs. Mem. at 20–21; Seder Dep. at 117, 120–21. First, the Court finds that Plaintiff has not made a *prima facie* case because she has not provided competent evidence demonstrating that Seder generated Miller's list of reports in a more favorable way.  Moreover, even if the Court assumes, *arguendo*, that Plaintiff has made a *prima facie* case, Plaintiff has not presented any facts showing that Defendants' stated reason for not including the higher-earning staff analyst was pretextual.  Plaintiff has not provided admissible evidence showing that the VEA policy allowed Seder to include that staff analyst or that Seder was willing to violate the VEA policy to support Miller's VEA.  *See* Seder Dep. 117–27; Miller VEA Email.

Accordingly, Defendants' motion for summary judgment on Plaintiff's claims under Title VII, § 1981, the ADEA, and the NYSHRL based on the VEA is GRANTED.

C.  Failure to Promote

With respect to Plaintiff's claims arising out of Defendants' failure to promote Plaintiff to the CMF GSSS position, Defendants argue that Plaintiff has not made a *prima facie* case because

she did not apply for the GSSS promotion.  Defs. Mem. at 22–23.  In response, Plaintiff contends that she need not have applied for the CMF GSSS promotion to make a *prima facie* case because the job listing was not publicly posted. *See* Pl. Mem. at 17–20.

When the position a plaintiff sought was subsequently filled, a plaintiff establishing a *prima facie* case for a discriminatory failure to promote must ordinarily demonstrate that "she: (1) is a member of a protected class; (2) was qualified for the position at issue; (3) was denied the position; and (4) that the circumstances of the adverse employment decision give rise to an inference of discrimination." *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003). (quotation marks omitted).  But, a plaintiff is excused from showing that she applied for a specific promotional opportunity when the plaintiff demonstrates that "(1) the vacancy at issue was not posted, and (2) the employee either had (a) no knowledge of the vacancy before it was filled or (b) attempted to apply for it through informal procedures endorsed by the employer." *Petrosino v. Bell Atl.*, 385 F.3d 210, 227 (2d Cir. 2004).

Here, Plaintiff has raised a dispute of material fact as to whether the CMF GSSS position was publicly posted.  Although the undisputed facts show that NYCTA had posted a listing for GSSS positions at "various" locations, they also show that the GSSS job posting was specifically for a role at a bus depot, and not a CMF office.  GSSS Posting.  The undisputed facts also show that there had never previously been a GSSS at a CMF office.  *See* Defs. 56.1 ¶¶ 92, 99; Miller Dep. at 41.  Based on this record, the Court cannot conclude that the GSSS CMF position was publicly posted or that Plaintiff knew, or should have known, that the publicly posted GSSS position included potential openings at CMF.

Finding that Plaintiff is excused from the application requirement, the Court concludes that Plaintiff has made a *prima facie* case for a claim based on a failure to promote.  Plaintiff has

shown that she was qualified for the position, as the GSSS' responsibilities mirrored her own and there is a genuine dispute of material fact around whether she "struggle[ed] to do any aspect of [her] job."  Pl. Dep. at 265; *see also* GSSS Posting; Manager Posting, ECF No. 81-13.  Plaintiff has also shown that the GSSS position was filled by Miller, a younger white man who initially held a lower title than Plaintiff.  Defs. 56.1 ¶¶ 3, 57.  This showing satisfies Plaintiff's minimal burden of raising an inference of discriminatory intent.  *See Broich v. Inc. Vill. of Southampton*, 462 F. App'x 39, 43 (2d Cir. 2012).

Because Plaintiff has made a *prima facie* case, the burden shifts to Defendants to rebut this showing with specific facts demonstrating that they had a legitimate reason for promoting Miller.  Defendants have not satisfied their burden.  In support of their decision to promote Miller over Plaintiff, Defendants argue that Plaintiff was not qualified for the position because she focused too much on timekeeping.  Defs. Reply at 8, ECF No. 90.  That Plaintiff spent the vast majority of her time on her timekeeping duties does not establish that she was incapable of performing other work.  Indeed, the record specifically demonstrates that Defendants viewed Plaintiff as capable of performing many of the tasks associated with the GSSS position, as Defendants assert that they decided to assign Plaintiff many of Miller's non-timekeeping tasks in an effort to prepare her for promotions.  *See, e.g.*, Defs. 56.1 ¶ 166.  Moreover, aside from the fact that Miller was on the GSSS promotional list and Plaintiff was not, Defendants have adduced no evidence demonstrating that Miller was more qualified than Plaintiff.  *Cf. Terry v. Ashcroft*, 336 F.3d 128, 139 (2d Cir. 2003).  Because the relevance of the GSSS promotional list is in dispute, Defendants cannot rely on this distinction.  *Cf. id*.

Accordingly, Defendants' motion for summary judgment on Plaintiff's claims under Title VII, § 1981, the ADEA, and the NYSHRL based on Defendants' decision to promote Miller over Plaintiff is DENIED.

### D. Demotion

Defendants argue that Plaintiff's claims based on her demotion fail because the changes to her work that followed Miller's promotion were not sufficiently severe to constitute an adverse employment action. Defs. Mem. at 23. Defendants also argue that, even if Plaintiff did suffer an adverse employment action, she has not provided sufficient evidence to show that this adverse employment action occurred under circumstances that give rise to an inference of discrimination. *See id*. at 24.

Genuine issues of material fact prevent the Court from concluding that Plaintiff did not suffer an adverse employment action following Miller's promotion. Defendants concede that Miller was installed as Plaintiff's direct supervisor in between her and Seder, which downgraded her in the NYCTA chain of command. *See* Defs. 56.1. ¶¶ 52, 127, 128. Defendants also concede that many of Plaintiff's direct reports and job duties were reassigned to Miller. *See* Defs. 56.1 ¶ 134; GSSS Posting; Manager Posting; *see also Smith v. City of New York*, 385 F. Supp. 3d 323, 332–33 (S.D.N.Y. Jun. 13, 2019). Although Defendants dispute whether the reassignments negatively impacted Plaintiff's work, such disputes are questions for the jury.

Nevertheless, the Court determines that Plaintiff has not made a *prima facie* case because she has not shown any facts that give rise to an inference that these potentially adverse actions were discriminatory. At the time of the reassignments, Plaintiff and Miller were not similarly situated—Miller was a GSSS, a director-level position, and Plaintiff was a Manager. *See McGuinness*, 263 F.3d at 53–54. To the extent Plaintiff wishes to challenge Miller's promotion

to GSSS, such a challenge is properly brought as a failure to promote claim.  Additionally, as stated above, Plaintiff has not provided any other evidence that would allow a reasonable jury to find that the changes in reporting structure and responsibilities were discriminatory. *See supra* section II.A.

Accordingly, Defendants' motion for summary judgment on Plaintiff's claims under Title VII, § 1981, the ADEA, and the NYSHRL based on Defendants' demotion of Plaintiff is GRANTED.

### E.   Transfer

Plaintiff argues that Defendants discriminated against her by creating a plan in which she would be transferred to the Zerega office and given different work responsibilities.  Pl. Mem. at 22–24.  Because Plaintiff retired before these actions took place, *see* Zerega Transfer; Defs. 56.1 ¶ 173, she cannot claim that they constituted an adverse employment action, *see Mullins v. Potter*, No. 04 Civ. 72965, 2005 WL 2396997, at *3 (E.D. Mich. Sept. 28, 2005) ("The mere issuance of a notice of an action that never was effected cannot be considered an adverse employment action.").  Furthermore, no reasonable jury could conclude that merely being informed of these changes constituted "a "materially adverse change in the terms and conditions of employment."  *Sanders v. New York City Hum. Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) (quotation marks omitted).  The Court shall, therefore, assess the parties' arguments regarding the proposed transfer as they relate to Plaintiff's claim for constructive discharge.

Accordingly, Defendants' motion for summary judgment on Plaintiff's claims under claims under Title VII, § 1981, the ADEA, and the NYSHRL based on Defendants' plan to transfer Plaintiff is GRANTED.

F.   Constructive Discharge

Defendants argue that Plaintiff has not established a claim for constructive discharge because she has not shown that Defendants "'deliberately created working conditions so intolerable' that 'a reasonable person would have felt compelled to resign.'"  Defs. Mem. at 28 (quoting *Tulino v. City of New York*, 813 F. App'x 725, 726 n.2 (2d Cir. 2020)).  The Court agrees.

"[A]n employee is constructively discharged when h[er] employer, rather than discharging h[er] directly, intentionally creates a work atmosphere so intolerable that [s]he is forced to quit involuntarily."  *Petrosino*, 385 F.3d at 229.  With regard to the first element, a plaintiff must show either "specific intent" or, at the very least, that "the employer's actions were deliberate and not merely negligen[t] or ineffective."  *Id.* at 230 (quotation marks omitted) (alteration in original).  And, as to the second element, a plaintiff must show that a reasonable person would have found the working conditions intolerable.  *See id.*  A plaintiff cannot satisfy this element by showing "that the working conditions were merely difficult or unpleasant." *Simmons-Grant v. Quinn Emanuel Urquhart & Sullivan, LLP*, 915 F. Supp. 2d 498, 506 (S.D.N.Y. 2013) (citation omitted); *see also Green v. Town of E. Haven*, 952 F.3d 394, 404 (2d Cir. 2020) (finding a showing based on employer criticism inadequate).  And, a plaintiff cannot meet her burden by showing that she was "dissatisfied with the work assignments [she] receive[d] within [her] job title," even if that dissatisfaction stemmed from a reduction in job responsibilities.  *Petrosino*, 385 F.3d at 231; *see also Tulino*, 813 F. App'x at 727.  Finally, plaintiffs must also show that these intolerable working conditions arose under circumstances that support an inference of discriminatory intent.  *See Green v. Brennan*, 578 U.S. 547, 555–56 (2016).

Here, Plaintiff's claims for constructive discharge fail, primarily, because she has not shown that she was subjected to intolerable working conditions that resulted from Defendants' discriminatory animus.  First, as discussed above, Plaintiff's claim for constructive discharge cannot be supported by the denial of a supporting staff analyst, the failure to provide a raise, or the demotion because she has not shown that those actions took place under circumstances giving rise to the inference of discrimination.  *See supra* II.A., B., & D.  Moreover, facts showing that Defendants criticized her work performance on a few occasions and did not include her in all meetings or emails, *see, e.g.*, Defs. 56.1 ¶ 200, Pl. Dep. I at 346–48, 359–66, do not show that a reasonable person would have found her working conditions difficult or unpleasant, let alone intolerable, *see Green*, 952 F.3d at 404.  Furthermore, to the extent Plaintiff seeks to support her claim for constructive discharge with Defendants' decision to transfer her to Zerega and alter her work responsibilities, Plaintiff must show that a reasonable employee would have found the communication of the decision itself intolerable because, as stated above, the decision was never implemented.  Plaintiff has not made such a showing.  And, although Plaintiff has raised an inference that Defendants' failure to promote her was discriminatory, not receiving a promotion is not a condition that is so intolerable that a unpromoted employee would feel "compelled to resign."  *Spence v. Maryland Cas. Co.,* 995 F.2d 1147, 1156 (2d Cir. 1993).  Even after viewing all of the "adverse treatment . . . in the aggregate," Pl. Mem. at 25, the Court finds that no reasonable jury could conclude that Plaintiff experienced a constructive discharge.

Accordingly, Defendants' motion for summary judgment on Plaintiff's claims under claims under Title VII, § 1981, the ADEA, and the NYSHRL based on constructive discharge is GRANTED.

III.   NYCHRL

The Court must analyze Plaintiff's claims under the NYCHRL separately because the NYCHRL "requires an independent liberal construction analysis in all circumstances, even where [s]tate and federal civil rights laws have comparable language in order to fulfill the statute's uniquely broad and remedial purposes." *Branch*, 2020 WL 4057594, at *7 (quotation marks omitted); *see also Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013).

The Second Circuit has explained that NYCHRL claims differ from claims brought under federal or state law because a plaintiff bringing NYCHRL claims need not show that she suffered an adverse employment action; rather, she must show only "differential treatment—that she [wa]s treated less well—because of a discriminatory intent." *Mihalik*, 715 F.3d at 110 (quotation marks omitted); *Williams v. Regus Mgmt. Grp., LLC*, 836 F. Supp. 2d 159, 172 (S.D.N.Y. 2011) ("[A]ny non-trivial discriminatory act is actionable."). But, when applying this standard, "district courts must be mindful that the NYCHRL is not a general civility code," and they must require that the plaintiff show that the "the conduct [was] caused by a discriminatory motive." *Id.* (quotation marks omitted). Additionally, courts assessing NYCHRL claims based on constructive discharge still require a plaintiff to show "deliberate actions taken by the employer sufficient to cause a reasonable person to feel compelled to resign." *Tulino*, 813 F. App'x at 727.

Defendants argue that Plaintiff's claims under the NYCHRL all fail. Defs. Mem. at 28–29. With the exception of Plaintiff's claims based on a failure to promote, the Court agrees. *See Mihalik*, 715 F.3d at 109 (describing federal and state law as a "floor"). Plaintiff's claims fail with respect to the denial of a supporting staff analyst, the failure to provide a raise, and the demotion because she has not shown that those actions took place under circumstances giving

rise to the inference of discrimination.  *See supra* II.A., B., & D.  Plaintiff's claim for constructive discharge also fails because she has not shown that Defendants took deliberate actions sufficient to compel a reasonable person to resign.  *See supra* II. F.  And, Plaintiff's claim based on the decision to transfer her to Zerega and change her work responsibilities fails because these actions never occurred.  The Court does not find merely being informed of a planned work reassignment actionable even under the NYCHRL's more liberal standards.

Accordingly, Defendants' motion for summary judgment on all of Plaintiff's NYCHRL claims other than her claim for failure to promote is GRANTED, and Defendants' motion for summary judgment on Plaintiff's failure to promote claim is DENIED.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment on all of Plaintiff's claims other than her claims for failure to promote is GRANTED, and Defendants' motion for summary judgment on Plaintiff's failure to promote claims is DENIED.  The Clerk of Court is directed to terminate the motion at ECF No. 73.

SO ORDERED.

Dated:  March 22, 2022
        New York, New York

_____
ANALISA TORRES
United States District Judge